# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Joseph Edwin Harju,                               Civil No. 07-2094 (ADM/SRN)

        Petitioner,

    v.                                        <u>**REPORT AND RECOMMENDATION**</u>

Joan Fabian, Commissioner of
Corrections,

        Respondent.

---

    Joseph Edwin Harju, <u>pro se</u>, MCF-Lino Lakes, 7525 Fourth Avenue, Lino Lakes, Minnesota, 55014

    Margaret Jacot, Esq., and Peter Marker, Esq., Minnesota Attorney General's Office, Suite 1100, 445 Minnesota Street, St. Paul, Minnesota, 55101, on behalf of Respondent Joan Fabian

---

SUSAN RICHARD NELSON, United States Magistrate Judge

    The above-entitled matter comes before the undersigned United States Magistrate Judge on Petitioner Joseph Edwin Harju's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1), Petitioner's Motion for Summary Judgment (Doc. No. 12), and Petitioner's Motion to Appoint Counsel, for Expanded Discovery, and for an Evidentiary Hearing (Doc. No. 22). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that the petition be dismissed and the motions be denied.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

    In May 2000, Petitioner pled guilty to two counts of criminal sexual conduct in the third degree. He was sentenced to two consecutive sentences of thirty-six months, to be followed by a five-year term of conditional release. On March 22, 2004, Petitioner was released from the

Minnesota Correctional Facility at Moose Lake and placed on intensive supervised release.  As part of the intensive supervision, Petitioner was subject to certain conditions.  One of the conditions was that Petitioner could have no direct or indirect contact with minors without prior approval from his supervision officer.  Another condition prohibited Petitioner from possessing sexually explicit materials.

In August 2004, Petitioner went to the Duluth Clinic for a medical appointment.  His supervision officer, Timothy Comrie, had authorized him to go only to the X-ray department, which is on the second floor of the clinic.  After his appointment ended, however, Petitioner went to the fourth floor of the clinic, where the pediatric unit is located, and where children were present.  A Bethel Work Release case worker, Angie O'Keefe, who knew Petitioner, happened to be in the fourth floor waiting room with her child.  Ms. O'Keefe saw Petitioner wandering around the lobby and waiting room area.  She approached Petitioner and asked his purpose for being on the pediatrics floor.  He said he was looking for a telephone.  Ms. O'Keefe told Petitioner he was on the pediatrics floor and told him to leave immediately.  Ms. O'Keefe reported the incident to Mr. Comrie.

Mr. Comrie went to Petitioner's apartment to ask him about the incident.  During a search of the apartment, Mr. Comrie found a <u>National Geographic</u> magazine from 1998 that contained a full frontal photograph of nude boys bathing each other.  The boys in the photograph were the same age as Mr. Comrie's previous target victims.

A revocation hearing was held on August 17, 2004.  Mr. Comrie testified, and the magazine was introduced as evidence.  The hearing officer determined that Petitioner had violated his conditions of supervised release by having indirect contact with minors and by

2

possessing sexually explicit material.  The hearing officer revoked the release and returned

Petitioner to prison for 180 days.  A hearing date was set for the end of the 180-day period to

determine if Petitioner had been placed in sex offender treatment.  If he had not, he was to serve

365 days of accountability time.

On February 6, 2005, Petitioner filed a habeas petition in Carlton County District Court.

Petitioner was transferred to the Minnesota Correctional Facility in Stillwater, Minnesota, and

venue for the petition was changed to Washington County.  The Honorable Elizabeth Martin

issued an order denying the petition on August 22, 2005.  Petitioner appealed, and the Minnesota

Court of Appeals affirmed the decision on August 8, 2006.  The Minnesota Supreme Court

denied review on November 14, 2006, and Petitioner filed the instant habeas petition in federal

court.

Petitioner advances four claims in his petition.  First, he asserts that the State failed to

disclose evidence to him, in violation of his right to due process.  Second, he claims that

Respondent's seizure of his private property was a violation of the First, Fourth, Eighth, and

Fourteenth Amendments of the United States Constitution.  Third, Petitioner asserts that there

was insufficient evidence to revoke his supervised release.  Fourth, Petitioner argues that his

release conditions were too vague and overbroad to put him on notice that his conduct would

result in a revocation of his release.

## II.     DISCUSSION

### A.     Petitioner's Motion to Appoint Counsel, for Expanded Discovery, and for an Evidentiary Hearing

Petitioner has asked the Court to appoint him counsel in this proceeding.  Pro se litigants

do not have a constitutional or statutory right to counsel in civil cases.  Stevens v. Redwing, 146

F.3d 538, 546 (8th Cir. 1998).  Rather, the appointment of counsel is a matter of the court's

discretion.  McCall v. Benson, 114 F.3d 754, 756 (8th Cir. 1997); Mosby v. Mabry, 697 F.2d

213, 214 (8th Cir. 1982).  Among the factors the court should consider are the factual complexity

of the case, the ability of the litigant to present his claims, the complexity of the legal issues, and

whether both the litigant and the court would benefit from having the litigant represented by

counsel.  McCall, 114 F.3d at 756; Johnson v. Williams, 788 F.2d 1319, 1322-23 (8th Cir. 1986).

Here, the Court finds that neither the facts nor the legal issues involved in this case are so

complex as to warrant appointment of counsel.  Moreover, Petitioner has the threshold ability to

articulate his claims and to argue his positions, and he is able to communicate effectively with

the Court.  Finally, the Court is satisfied that appointment of counsel would not substantially

benefit the Court or Petitioner.  Therefore, Petitioner's motion for appointment of counsel should

be denied.

Turning to Petitioner's request for expanded discovery, he seeks to establish that he did

not enter the pediatric unit of the Duluth clinic.  However, Petitioner does not explain what

possible, extraneous evidence exists to support this assertion.  He has submitted a diagram of the

clinic's fourth floor, and he has conceded to being on the fourth floor on the day in question.

The Court finds there is nothing more to be learned by receiving additional, unspecified evidence

on this issue.  Petitioner also seeks to obtain two audio disks of his revocation hearing, which he

sent to a person named Frances Fritsche.  As Respondent has pointed out, there is no reason why

Petitioner could not have contacted Ms. Fritsche himself and asked her to forward the disks to

the Court.[1]  Moreover, and perhaps more importantly, there is no dispute as to what evidence

was elicited at the hearing, and thus, there is no need for the Court to listen to any recordings.

Accordingly, Petitioner's request for discovery and an evidentiary hearing should be denied.

**B.      The Claims in the Petition**

Habeas relief is available to a state prisoner if "he is in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Anti-Terrorism

and Effective Death Penalty Act (AEDPA) limits habeas review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

The United States Supreme Court has explained the meanings of the "contrary to" and

"unreasonable application" clauses in Williams v. Taylor, 529 U.S. 362 (2000).  A state court

decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite

that reached by [the Supreme] Court on a question of law" or "decides a case differently than

th[e] [Supreme] Court has on a set of materially indistinguishable facts."  Id. at 412-13.  A state

court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the

correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case."  Id. at 413.  "A federal court may not

issue the writ simply because it 'concludes in its independent judgment that the relevant state-

---

[1] Respondent cannot provide a transcript of the hearing because the State destroys
recordings of revocation hearings after one year.

court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Lyons v. Luebbers, 403 F.3d 585, 592 (2005) (quoting Williams, 529 U.S. at 411).

In addition, when reviewing a state court decision, "a federal court . . . presumes that the state court's factual determinations are correct."  Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000); 28 U.S.C. § 2254(e)(1).  This deference applies to factual determinations made by state trial courts and state appellate courts.  Sumner v. Mata, 449 U.S. 539, 547 (1981).  The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see Whitehead v. Dormire, 340 F.3d 532, 539 (8th Cir. 2003).

**1.      Whether Petitioner's Due Process Rights Were Violated by the Failure to Provide Him with a Copy of His Weekly Activity Schedule**

Petitioner asserts that he was denied due process because he did not receive a copy of the weekly activity schedule about which his supervision officer, Mr. Comrie, testified during the revocation hearing.  Petitioner submits that the document would have proven that he did not deviate from his approved schedule.

A person on supervised release is "entitled to constitutional protection, including procedural due process."  Morrissey v. Brewer, 408 U.S. 471, 496 (1972) (Douglas, J., dissenting).  Before revoking supervised release, which is also sometimes referred to as "parole," the State must conduct "an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior."  Id. at 484.  There are typically two stages to this informal structure.  "The first stage occurs when the parolee is arrested and detained, usually at

6

the direction of his parole officer.  The second occurs when parole is formally revoked." Id. at

485.  The second stage includes the final revocation hearing, at which "[t]he parolee must have

an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he

did, that circumstances in mitigation suggest that the violation does not warrant revocation." Id.

at 488.  The "minimum requirements of due process" are:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee
> of evidence against him; (c) opportunity to be heard in person and to present
> witnesses and documentary evidence; (d) the right to confront and cross-examine
> adverse witnesses (unless the hearing officer specifically finds good cause for not
> allowing confrontation); (e) a 'neutral and detached' hearing body such as a
> traditional parole board, members of which need not be judicial officers or
> lawyers; and (f) a written statement by the factfinders as to the evidence relied on
> and reasons for revoking parole.

Id. at 488-89.

In this case, Petitioner's procedural due process rights were not violated simply because

the weekly schedule was not used as evidence against him.  The hearing officer did not consider

the schedule in making her decision; rather, she relied on the testimony of Mr. Comrie to

conclude that Petitioner was on the floor of the Duluth Clinic containing the pediatrics unit and

that he had no authorization to be there.  In addition, Petitioner does not assert that his weekly

schedule expressly authorized him to be on the fourth floor, nor does Petitioner dispute that he

was authorized to go to the clinic only for X-rays and that the X-ray department was on the

second, not the fourth, floor.  The Court finds no due process violation based on the State's

alleged failure to disclose evidence.

Relatedly, Petitioner argues in his memorandum supporting the habeas petition, although

not in the petition itself, that the neutrality of the hearing was compromised by the presence of

Mr. Comrie.  However, there is nothing to indicate that Mr. Comrie inappropriately participated

in the hearing or improperly influenced the hearing officer's decision, and Petitioner and his counsel were present during all phases of the revocation hearing.  Petitioner has presented no authority that a supervision officer may not testify at a revocation hearing.

In sum, Petitioner's due process rights were not violated by the failure to produce a copy of his weekly schedule or by his supervision officer's presence at the revocation hearing.  Accordingly, this claim should be denied.

### 2.    Whether the Seizure and Admission of the <u>National Geographic</u> Magazine Were Unconstitutional

Petitioner contends that the seizure of the <u>National Geographic</u> magazine from his home violated his First, Fourth, Eighth, and Fourteenth Amendment rights.  Regarding his First Amendment claim, he argues that the seizure of the magazine violated his First Amendment rights because the condition of supervised release prohibiting the possession of sexually explicit materials is vague and overbroad.  The Court fully discusses the vagueness and overbreadth challenges in Part II.B.4 below.

Petitioner has not explained how the seizure of the magazine contravened his Eighth Amendment rights.  The Court finds that the Eighth Amendment's prohibition against cruel and unusual punishment is not relevant here and accordingly recommends dismissal of this claim.

Petitioner's challenge to the seizure of the magazine is really grounded in the Fourth Amendment. When Petitioner was released on supervision, he signed an agreement that authorized the search of his residence by his parole officer at any time.  This type of agreement has been upheld by the United States Supreme Court.  <u>See</u> <u>United States v. Knights</u>, 534 U.S. 112, 119-20 (2001) (finding such a condition reasonable because probationers do not enjoy

absolute liberty); see also Griffin v. Wisconsin, 483 U.S. 868, 880 (1987) (finding a search of a probationer's residence reasonable under the Fourth Amendment because it was conducted pursuant to a valid, probation-related regulation, and there were reasonable grounds to believe contraband would be found).  When a person on supervised release has entered into such an agreement, a search of his residence need only be supported by a reasonable suspicion that he has violated a condition of release.  See United States v. Vincent, 167 F.3d 428, 430-31 (8th Cir. 1999) (upholding a condition authorizing warrantless searches of a probationer's home at any time).  Here, Petitioner's supervision officer had a reasonable suspicion that Petitioner had violated a condition of his supervised release by having indirect contact with minors on the pediatric floor of the Duluth clinic, based on the report by Ms. O'Keefe.  Considering the agreement signed by Petitioner in conjunction with the reasonable belief that he had violated a condition of release, the Court finds that the search of Petitioner' apartment and the seizure of the magazine did not violate the Fourth Amendment.

Finally, as to Petitioner's Fourteenth Amendment claim, he asserts specifically that his right to due process was infringed by the use of the magazine as evidence against him in the revocation hearing and by the failure of the State to return the magazine to him.[2]  The Court has already determined that the seizure of the magazine was proper under the Fourth Amendment. Even if the magazine was seized in violation of Petitioner's Fourth Amendment rights, however, the federal exclusionary rule would not have barred introduction of the evidence at his revocation hearing.  See Pa. Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 364 (1998).

---

[2] Insofar as Petitioner's Fourteenth Amendment claim could be construed as a challenge to the language of the conditions as vague or overbroad, the Court addresses this claim in Part II.B.4.

Furthermore, no other due process violation occurred as a result of admitting the magazine into evidence because the State disclosed the adverse evidence to Petitioner and he was given an opportunity to refute the evidence.  With respect to Petitioner's wish to have the magazine returned to him, he has provided no authority which would permit the return of contraband to him.  In addition, he has not shown that Respondent is even in possession of the magazine. Finally, he has failed to show that no adequate state procedure exists to recover the property.

    **3.**    **Whether There Was Insufficient Evidence to Revoke Petitioner's Supervised Release**

Petitioner cites In re Winship, 397 U.S. 358 (1970), for the proposition that his supervised release was revoked based on insufficient evidence.  In that case, the United States Supreme Court held that the reasonable doubt standard of proof applied to a juvenile delinquency hearing in which the juvenile was charged with a violation of criminal law.  Id. at 364-65, 368.  The case is inapplicable to this case for two reasons: Petitioner is not a juvenile, and he was not convicted of violating a criminal law in the revocation hearing.

In the context of a parole revocation, a person is not entitled to the "full panoply of rights" afforded in a criminal prosecution.  Morrissey, 408 U.S. at 480.  Rather, "'all that is required is enough evidence, within a sound judicial discretion, to satisfy the district judge that the conduct of the probationer has not met the conditions of the probation.'"  United States v. Strada, 503 F.2d 1081, 1885 (8th Cir. 1974) (quoting United States v. Garza, 484 F.2d 88, 89 (5th Cir. 1973)).  In Petitioner's case, the hearing officer considered the magazine that was found in Petitioner's home, as well as testimony from Petitioner's supervision officer that Petitioner did not have permission to be on the floor of the Duluth Clinic that housed the pediatric unit, to

determine that Petitioner had violated two conditions of his release.  Petitioner has no evidence, much less clear and convincing evidence, to rebut the hearing officer's presumptively correct factual finding.

Petitioner maintains that his weekly schedule authorized him to be in the general lobby of the Duluth Clinic, which he believes is located on the fourth floor of the clinic.  However, the hearing officer expressly found that Petitioner was not authorized to be on the fourth floor, based on the testimony of his supervision officer.  Moreover, Petitioner submitted a diagram of the fourth floor of the Duluth Clinic and two letters from clinic administrators in support of his claim.  While it is true that the fourth floor contains a lobby area, it is only the lobby area for that floor, not for the entire clinic.  As Dr. Peter Person explained, "I can tell you that our Pediatrics Department does share our Duluth Clinic fourth floor, including lobby and waiting area, with several other clinic departments."  (Pet'r. Ex. G-32; Doc. No. 5.)  Dr. Person's statement indicates that the fourth floor does not contain the lobby area for the entire clinic, only certain departments.  This evidence does not clearly and convincingly rebut the hearing officer's finding that Petitioner was not authorized to be on the fourth floor; indeed, it tends to support the finding.

Finally, Petitioner asserts that the magazine picture of nude boys was not sexually explicit, and thus, could not have constituted sufficient evidence to revoke his release.  Even if this assertion was true, it is immaterial, because sufficient evidence exists that Petitioner violated the condition of release pertaining to indirect contact with minors.  Furthermore, the Court has not seen the photograph and therefore cannot determine whether the hearing officer unreasonably determined that it was sexually explicit.  It is Petitioner's burden to rebut the

11

hearing officer's presumptively correct factual finding, and he has not done so.

### 4.     Whether the Release Conditions Were Vague or Overbroad

Petitioner argues that the conditions of his release prohibiting indirect contact with a minor and forbidding him from possessing sexually explicit materials were so vague and overbroad that they violated his right to substantive due process.  Specifically, he states that the indirect contact condition did not provide him with adequate notice that his brief presence in the fourth floor lobby area of the Duluth Clinic would constitute indirect contact with minors.  He further asserts that the sexually explicit materials condition did not provide him with adequate notice that he could not possess what he characterizes as an inoffensive, anthropological photograph of nude boys.

The Eighth Circuit Court of Appeals has upheld conditions similar to Petitioner's. Recently, in United States v. Boston, the court upheld a condition which prevented the probationer from possessing any form of pornography, sexually stimulating material, or sexually oriented material.  494 F.3d 660, 668 (8th Cir. 2007).  The court found the condition reasonably related to the offense and to the defendant's history and characteristics, and that the condition would deter future criminal conduct and protect the public.  Id. at 667-68.  In light of these objectives, the condition was not an unreasonable deprivation of the defendant's rights.  Id.  In United States v. Ristine, a condition banning "any pornographic material" was found to be neither vague nor overbroad.  335 F.3d 692, 694-95 (8th Cir. 2003).  In United States  v. Crume, the court upheld a condition prohibiting any contact with children under the age of eighteen without prior approval from a probation officer.  422 F.3d 728, 734 (8th Cir. 2005).  The condition was both reasonably related to the defendant's offense and characteristics, and it was

not an excessive deprivation of liberty, considering the particular circumstances of the case.  Id.

Finally, in United States v. Heidebur, the court upheld a condition that prohibited contact with

children under eighteen as not unreasonably vague.  417 F.3d 1002, 1005-06 (8th Cir. 2005).

In the present case, the condition prohibiting the possession of sexually explicit materials

prevented Petitioner from possessing material that he believed he had a First Amendment right to

view.  Nevertheless, the Court finds that the restriction was not overbroad in light of Petitioner's

history of illegal sexual activities with children[3] and the need to deter similar behavior in the

future.  See Boston, 494 F.3d at 668; Ristine, 335 F.3d at 696.  The condition prohibiting

Petitioner's direct or indirect contact with minors was not overbroad for the same reasons.  Both

of the conditions were appropriately tailored to promote Petitioner's rehabilitation and protect

minors from further exploitation by Petitioner.

As to vagueness, the Court finds that both conditions gave Petitioner adequate notice

about what conduct would violate a condition.  In reading the ban on the possession of sexually

explicit material, one could reasonably understand that possessing full-frontal pictures of young,

naked boys bathing each other was forbidden.  As the condition was applied to Petitioner, the

condition is even less vague, considering Petitioner's history and that the boys in the picture

were the same age as Petitioner's target group.

Examining the restriction against direct or indirect contact with minors for vagueness,

one could reasonably comprehend that wandering around an area of a medical clinic that

_____

[3] Petitioner is designated as a Level III sex offender.  In addition to the two counts of third degree criminal sexual conduct to which he pled guilty in 2000, he has also been convicted of indecent liberties with a child under the age of sixteen, second degree attempted child molestation, and indecent exposure.

contained a pediatrics ward would violate the condition.  As the condition was applied to

Petitioner, he should not have gone to an area of the clinic for which he did not have

authorization, knowing the risk that children might be present.  Moreover, once he noticed that

children were present on the fourth floor of the clinic, he should have left immediately.  Instead,

he wandered around the area until Ms. O'Keefe told him to leave.

In conclusion, the conditions of Petitioner's release prohibiting indirect contact with

minors and the possession of sexually explicit materials were neither vague nor overbroad.

Accordingly, the conditions did not violate Petitioner's due process rights.

Based upon all of the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1.    Petitioner Joseph Edwin Harju's Petition for Writ of Habeas Corpus pursuant to

      28 U.S.C. § 2254 (Doc. No. 1) be **DENIED**;

2.    Petitioner's Motion for Summary Judgment (Doc. No. 12) be **DENIED**; and

3.    Petitioner's Motion to Appoint Counsel, for Expanded Discovery, and for an

      Evidentiary Hearing (Doc. No. 22) be **DENIED**.

Dated: January 10, 2008

                                    s/ Susan Richard Nelson
                                   SUSAN RICHARD NELSON
                                   United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing
with the Clerk of Court, and serving all parties by **January 25, 2008**, a writing which
specifically identifies those portions of this Report to which objections are made and the basis of
those objections.  Failure to comply with this procedure may operate as a forfeiture of the
objecting party's right to seek review in the Court of Appeals.  A party may respond to the

objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.